**GROVE PRESS, INC., a New York corporation, Kenneth W. Andrews, Calvin Tyrone Gray, and Bill-Ken, Inc., a Virginia corporation, t/a Star Twin Indoor Theatre, Plaintiffs,**

v.

**Andre EVANS, Commonwealth's Attorney for the City of Virginia Beach, Virginia, and W. R. Davis, Chief of Police for the City of Virginia Beach, Virginia, Defendants.**

Civ. A. No. 355–69–N.

United States District Court
E. D. Virginia,
Norfolk Division.

Argued Oct. 20, 1969.

Decided Nov. 26, 1969.

Stanley E. Sacks, Michael R. Caprio, Jr., Sacks, Sacks & Tavss, Norfolk, Va., for plaintiffs.

Robert Y. Button, Atty. Gen., Anthony F. Troy, Asst. Atty. Gen., Richmond, Va., Andre Evans, Commonwealth's Atty. for City of Virginia Beach, Va., for defendants.

Before BUTZNER, Circuit Judge, and KELLAM and MERHIGE, District Judges.

BUTZNER, Circuit Judge:

The owner and exhibitors of the motion picture film, "I Am Curious (Yellow)," seek a declaration that Virginia's obscenity statutes are unconstitutional and an injunction restraining the Commonwealth's Attorney and Chief of Police of the City of Virginia Beach, Virginia, from future prosecutions charging violation of the statutes. The exhibitors originally sued for return of the film, which the Chief of Police had seized, and for an injunction against a pending criminal prosecution. Judge Merhige, acting under 28 U.S.C. § 2284(3) and (5) granted a temporary restraining order prohibiting retention of the film, but he refused to enjoin the pending prosecution in the state court. Cf. Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969), cert. denied, 396 U.S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449 (1970). The defendants returned the film, and the parties apparently arranged a mutually satisfactory schedule for the state prosecution. By common consent of the parties, these issues are no longer before us. But this has not mooted the case, for the threat to enforce these allegedly unconstitutional statutes by future prosecutions has such a chilling effect upon the plaintiffs' assertion of their First Amendment rights that they may seek equitable relief in these proceedings. Dombrowski v. Pfister, 380 U.S. 479, 483, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

I.

The following definition of "obscene" is an integral part of Virginia's laws dealing with obscenity:[1]

"The word 'obscene' where it appears in this article shall mean that which considered as a whole has as its dominant theme or purpose an appeal to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor

[1] Va.Code Ann. § 18.1–227 (1960) supplies the definition for "obscene" as used in

Va.Code Ann. § 18.1–228 through 18.1–236.4 (1960 and 1968 Supp.).

in description or representation of such matters."

The plaintiffs concede that this definition follows the standard prescribed by Roth v. United States, 354 U.S. 476, 487, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), but they contend it is deficient because it fails to state that "the material [must be] utterly without redeeming social value," as explained in A Book Named "John Cleland's Memoirs of a Woman of Pleasure v. Attorney General, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1 (1966).

The plaintiffs' attack, however, is foreclosed by the recent decision of House v. Commonwealth, 210 Va. 121, 169 S.E. 2d 572 (1969). There the Supreme Court of Appeals expressly recognized that in determining whether a publication was constitutionally protected, Virginia courts were bound by the Supreme Court's definition of obscenity found in *Roth* as amplified and explained in *Memoirs*. Consequently, in a prosecution charging the sale of obscene magazines, the Court found the evidence to be insufficient to support a conviction when measured by the following test:

"[W]hether to the average person, applying contemporary community standards:

"'(1) The dominant theme of the material taken as a whole appeals to a prurient interest, that is a shameful or morbid interest in nudity and sex;

"'(2) The material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and

"' (3) The material is utterly without redeeming social value.'" [169 S.E.2d at 576]

The standard approved by the Supreme Court of Appeals follows the teaching of Memoirs [383 U.S. at 418, 86 S.Ct. at 977], where the Court said:

"We defined obscenity in Roth in the following terms: '[W]hether to the average person, applying contemporary community standards, the dom-inant theme of the material taken as a whole appeals to prurient interest.' 354 U.S., at 489, 77 S.Ct., at 1311, [1 L.Ed.2d, at 1509]. Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

We conclude, therefore, that the definition of obscenity adopted by Virginia courts fully complies with the constitutional standards prescribed by the Supreme Court.

Stein v. Batchelor, 300 F.Supp. 602 (N.D.Tex.1969), on which the plaintiffs rely, does not command a contrary result. There, it is true, a statutory definition of obscenity which omitted to expressly state that the publication must be utterly without redeeming social value was held to be unconstitutional. The crucial difference making that case inapplicable here is the absence of interpretation of the Texas statute by Texas courts.

■ We are not persuaded by the plaintiffs' suggestion that only the legislature can amend the statutory definition of "obscene." For the purpose of testing the constitutionality of Virginia's statute, the interpretation by the Supreme Court of Appeals is as definitive as if the statute had been amended by the legislature. See Winters v. New York, 333 U.S. 507, 514, 68 S.Ct. 665, 92 L.Ed. 840 (1948). Nor can we join the plaintiffs in characterizing the Court's language as dictum. It cannot be doubted that the definition of obscenity approved by Virginia's highest court is binding upon the state's trial courts and magistrates. And on well-settled principles, we accept it as the authoritative exposition of Virginia law. Cramp v. Board of Public Instruction, 368 U.S.

278, 285, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961).

## II.

In Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), the Supreme Court held that a statute which punished the private possession of an obscene motion picture film violated the First Amendment as made applicable to the states by the Fourteenth Amendment. The plaintiffs urge that Virginia Code Ann. § 18.1–230 (1960) suffers the same infirmity. This statute provides:

"Every person who knowingly:

"(1) Produces, promotes, prepares, presents, manages, directs, carries on or participates in, any obscene exhibition or performance, including the exhibition or performance of any obscene motion picture, play, drama, show, entertainment, exposition, tableau or scene; or

"(2) Owns, leases or manages any theatre, garden, building, structure, room or place and leases, lets, lends or permits such theatre, garden, building, structure, room or place to be used for the purpose of presenting such obscene exhibition or performance, shall be guilty of a misdemeanor."

■ The Supreme Court of Appeals has not interpreted this section, so we are compelled to place our own construction on it. Initially it should be noted, the statute on its face does not prohibit the mere private possession of obscene material, and thus it does not literally fall within the ambit of Stanley. Since the statute is susceptible of two interpretations, it is our duty to adopt, if possible, a construction that will avoid a declaration of unconstitutionality. United States v. Delaware & Hudson Co., 213 U.S. 366, 407, 29 S.Ct. 527, 53 L.Ed. 836 (1909).

The core of the statute is its condemnation of "any obscene exhibition or performance." These words connote public rather than private displays. A common meaning of performance is "a public presentation or exhibition," and exhibition has been defined as "a public show or showing; * * * a display or show where the display itself is the chief object and from which the exhibitor derives or expects to derive a profit." [2] This well-known usage appears to have guided Virginia law enforcement officers. Prosecutions under the statute, we are told, have been confined to public or commercial exhibitions or performances.

■ The statute has not been construed to prohibit the private possession of obscene material, and, especially in the light of Stanley, we find no basis for concluding that Virginia courts would endow it with such a strained and unnatural meaning. We conclude, therefore, that Virginia Code Ann. § 18.1–230 (1960) is constitutional.

## III.

In 1962, Virginia Code Ann. § 18.1–228 (4) was amended by the addition of a presumption, which, the plaintiffs charge, renders the statute unconstitutional. The statute provides:

"Every person who knowingly:

"*     *     *     *     *     *

"(4) Has in his possession with intent to sell, rent, lend, transport, or commercially distribute any obscene item, shall be guilty of a misdemeanor. *Possession in public or in a public place of any obscene item as defined in this article shall be deemed prima facie evidence of a violation of this section.*" [Italics supplied]

A Virginia trial court has held the presumption to be unconstitutional, and we agree.[3]

---

2. Webster's Third New International Dictionary (1964).

3. See House v. Commonwealth, 210 Va. 121, 169 S.E.2d 572, 574 (1969). The Supreme Court of Appeals found it unnecessary to rule on this point.

■ "[A] criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Leary v. United States, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed. 2d 57 (1969). Applying this test, we find the presumption to be unconstitutional. The Virginia statute does not punish the purchaser of an obscene item. But the presumption irrationally, we believe, would impute to every ultimate purchaser the intent to sell the item or do some other act condemned by the statute. Moreover, the presumption arbitrarily embraces a conscientious retailer who seeks to weed out, but nevertheless possesses, obscene publications delivered to him by his wholesaler or distributor.

Again applying the *Leary* test, we find it unlikely that public possession of obscene material proves knowledge of its obscenity. It is unreasonable to expect the proprietor of a retail book store to know the contents of all the publications he stocks. Recognition of this fact influenced the Supreme Court in holding unconstitutional an ordinance which authorized punishment for the possession of obscene books in any place where books are sold even though the bookseller lacked knowledge of the contents of the book. Smith v. California, 361 U.S. 147, 153, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).

■ To be sure, the Virginia statute, unlike the California ordinance, does not eliminate the element of scienter, but it places the burden of going forward with the evidence to prove lack of knowledge or intent upon the possessor. The collateral effect of this inhibition on the exercise of First Amendment rights furnishes an additional reason for the presumption's invalidity. See Smith v. California, 361 U.S. 147, 150, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959) (dictum).

■ Although the presumption is invalid, it does not follow that the entire section is unconstitutional. In House v. Commonwealth, 210 Va. 121, 169 S.E.2d 572, 575 (1969), the Supreme Court of Appeals assuming, but not deciding, that the presumption was unconstitutional, held that it was severable from the preceding part of the statute. This decision is conclusive upon us. Charles Wolff Packing Co. v. Court of Industrial Relations, 267 U.S. 552, 562, 45 S.Ct. 441, 69 L.Ed. 785 (1925). We hold, therefore, that the presumption is unconstitutional, but severable. The remaining portion of Virginia Code Ann. § 18.1–228(4) is valid. The defendants will be enjoined from applying the presumption against the plaintiffs in any future prosecutions.